The next case on for argument is United States v. Marino. I may please the Court. My name is Alex Eisman and I represent the defendant appellant Christian Marino. I just wanted to start with a sort of a general observation after having practiced law for more than 35 years now. That fact-finding and the process that goes into it, the argument before the judge, the judge having to often reduce in writing, particularly in civil cases, the appellate review is really like cross-examination in slow motion. And so here, where you have someone making an assertion, whether it's the judge below saying, you know, the conclusory things I've cited in the brief, or the government even in his brief reciting things in the pre-sentence report that I hope the panel sees that I pierced effectively in my reply brief. All those things now are before Your Honors. And I submit to you, you don't have a record to be able to support the disreport below. This is a very reluctant gang member. Someone is trying to get out of the gang. Someone who put their families and his own life at risk by cooperating and turned against his friends did help law enforcement penetrate MS-13, which is a real problem. And the Court said, acknowledged it, gave lip service. With all due respect, it was lip service, just saying, I know those exist. I don't think they're important, thus factoring. So what is this Court supposed to do? Sotomayor, here's what I've been wrestling with, and feel free to address it however you would like. It seems to me, as I look at what the district court was confronted with, was a plea agreement in which your client had pled guilty to a number of crimes, and each of which, including the 924C count, exposed him to a substantial amount of time. So the district judge may well have been between a rock and a hard place in dealing with what your client had admitted he had done and what he avoided being responsible for, being criminally responsible for. The background to that is that most practitioners know that, at least in the districts in New York City, that when someone cooperates, they're required to plead guilty to everything, avoids that cross-examination question of you're fingering my client and you've got such a great deal for doing that. So had Mr. Marino pled guilty, as every other defendant did, I believe, to one single count to the conspiracy, even to commit murder, his guideline range would have been in the end, when the dust settles, if you take out the grouping that came as a result of his cooperating, level 32. He's criminal history 2 because he was on probation when he committed these offenses. That's a guidelines range of 135 to 168 months. Your premise is that he pled guilty to everything that he could have been charged with, but the district court observed that he had committed other offenses that were not charged, including harboring aliens and assaulting gang members with dangerous weapons and witness tampering, very serious stuff. I expect, Judge Jacobs, if I take out the indictment and I look here, those who pled guilty who didn't cooperate were charged with other offenses as well. That's part of, you know, plea bargaining that goes on. With cooperators, we ratchet it up. You had said earlier that it is customary in the case here that your client pled guilty to every offense that could have been charged against him. And it looks like there's any number of offenses he could have been charged with that he wasn't charged with. Well, okay. Fair enough, Your Honor. I guess the offenses are, the harboring aliens is just one that stuck out in my mind that you mentioned, was a, you know, how serious an offense was that? Usually in cooperation agreements, there's an immunity clause that really, again, brings out the kitchen sink of other things that could have been charged. Witness tampering is a very toxic act. I guess, Your Honor, I don't really have much of a response except to say the reality of the situation is that all these members did the very same things. It's not like Mr. Marino was isolated out for having done these things and the other defendants who were given an opportunity to plead to just conspiracy to one count didn't do it. So I think it's a little bit, I don't want to say strawman argument because you're a court, a member of this Court, but I think it's an illusory argument. I'm just following up on something that you said, which doesn't seem to be fair. I think it's an illusory argument. When you really pierce and you look at the facts and you see what the other defendants were accused of doing, the deals that were made with the government and the deal that was offered to my client to cooperate, it's unfortunate that the very thing that lets the government have a better time defending the witness on the stand against cross-examination also influences the Court by saying, look at these other things he could have been charged with. I submit to you that the court conduct here was what he pled guilty to in the five or so offenses that he took and that. You agree we review this for abuse of discretion, correct? I do, Your Honor. And I submit to you. What do we say to all of the judges in the district courts in this circuit about why this is an abuse of discretion so that they avoid abusing that same discretion? Two reasons. Number one, there has to be a certain minimum threshold of fact-finding and explanation a district court has to do. Otherwise, you could just say I've decided this is a sentence. I've considered all these factors. Recite them and say I've thought about the facts. I've considered them. Make conclusory statements and you'll have nothing to review. Here there were arguments, powerful arguments, including the fact that the government didn't challenge my assertion below, that this defendant was similarly situated to other defendants who didn't cooperate who got the same sentence essentially. The Court didn't address that. You need to have the Court address it. You need to remand it and say, well, the appellate counsel brought this out. Tell us why you did that. And maybe in the process of doing that, often it happens in these two-stage processes, the Court won't have a good explanation for it, will be forced to consider it, because this Court said you have to do more than what you did in this case. I'll just try to hit a couple of points. I've saved three minutes so I can speak afterwards. There's no basis to give due deference when a court hasn't given this court the record to be able to do something. So I submit to you that the Court should remand it, mention the particular factors in 3553, there at the end of the appellant's reply brief, that the Court must consider and make the Court make a record. We'll come back then. I hope it doesn't take that long, because I think he has about a year to serve and he's still sitting at a facility in Queens. You know, he's at the toughest sentence, the toughest time you could possibly have. And at the end, hopefully, if Your Honors go back behind the end of the session and decide to vote to remand this or to reverse it, that you issue an order immediately requiring that there be a bail hearing presented. Obviously, I can make the application here, but I didn't make it below. But I submit to you it's not fair if, in fact, he's going to have a remand or a vacating of a sentence and he sits in jail. So I'll reserve the balance of my time. Yes. You've reserved three minutes, Mr. Eisenhower. Thanks. Ms. Smith. Your Honors, may it please the Court. My name is Alexandra Smith and I represent the United States on appeal. I also represented the United States before the district court. The district courts did not abuse its discretion in reaching the sentence it imposed, which was neither procedurally nor substantively unreasonable. As detailed in our brief, the district court discussed at length the application of all of the 3553A factors, which is beyond what is actually required by law, and gave appropriate weight to those factors. And the resulting sentence, which was 120 months' imprisonment, was almost 10 years below the bottom of the applicable guidelines, which both parties agreed were correctly calculated, and a year less than the sentence recommended by probation. What do you say to the argument, though, that Mr. Eisenhower has made about the co-defendants, if you will, or the persons against whom he was going to cooperate if they hadn't pleaded guilty? Your Honor, we included a chart in our brief that laid out all of the co-defendants in the case in which the defendant was actually charged, separate from the other trials in which he was set to potentially testify at. The defendant did plead guilty to racketeering with seven predicate acts of either attempted murder or conspiracy to murder, racketeering conspiracy, and then the use or the discharge of a firearm under 924C. What do you say to the undoubted irony that someone who's going to cooperate really has to plead to a whole bunch of very heavy offenses, whereas somebody who does not cooperate, just takes a plea, can often get a huge discount in what is charged? The defendant . . . Are courts supposed to consider that? Is it an error if they don't consider it? Was it considered in this case? It's our position that it was considered in this case. Again, the defendants who did not cooperate were given guideline sentences. In some cases, at the top of the guidelines. At least in one case with Mr. Arreta, above the guidelines, whereas . . . Your heavy-series argument is that because they pled, they pled to a small number of counts, and a cooperator had to plead to everything, and so the guidelines ranges were artificially depressed for the people who pled guilty, and his was artificially elevated. I understand the argument. I think that each defendant makes a decision about how to proceed in their case separately, and while the court does need to look, again, at similarly situated defendants, we would argue that this defendant's conduct . . . I recognize that particularly the reply brief spent a lot of time sort of minimizing the defendant's conduct, but he was, in fact, the leader of the gang. I think there's an argument that he was one of the most culpable defendants charged in that indictment, and he did agree to the cooperation agreement that he agreed to, but I think if you put him in context with the other defendants, separate from, I would think, Mr. Arreta or Mr. Barrera, he, in fact, was one of the most culpable defendants charged in that group. And so, while he did cooperate and he got the benefit of cooperation, it is entirely reasonable for the judge to look at the entirety of the conduct. And I do want to point out . . . Are there any cases that consider or in any way deal with the phenomenon that your adversary has pointed out, that cooperators are really required to plead to the virtually full panoply of illegal conduct, whereas co-defendants who plead are not? There aren't cases that we address in our papers. Before the district court, a lot of these arguments were made in a similar fashion. There were a number of cases raised about the type of cooperation that might lead to certain protective actions by the government, and those cases were . . . That would seem to be different. I understand the distinction. It's an interesting one. It is an interesting argument. There are no cases cited by defense counsel that address that argument specifically. It's not a 3553A factor in particular. And, again, I would caution against sort of the simplistic view that because somebody cooperates, we require them to plead to everything, whereas a plea agreement may be less stringent, in the sense that, again, I think it's a very particularized analysis. And in this case, this defendant not only participated in all of the acts . . . You would concede that there's a tendency at work because the government wants to elicit a plea that cannot be characterized as a sweetheart deal. I'm not sure that any of the pleas in this case to conspiracy to commit murder could be characterized as a sweetheart deal. I think that the defendant made certain choices, including one to cooperate. All of this information was before the district court judge. The district court judge considered all of the information carefully, and it was a lengthy sentencing colloquy. There was a discussion of case law that the defense raised in connection with various points. The cooperation was given due consideration. The judge did discuss the other conduct under 5K2.21, the tampering with witnesses, the harboring of the aliens, the additional assaults. And the defendant, in fact, admitted to the conduct for which he was sentenced. The judge, again, gave a sentence that was less than half of the guidelines, and a sentence that was one year below probation, looking at all of the information that's being raised on appeal. All of that was in front of the district court. So, I agree, it's an interesting question. But, at the end of the day, the discretion lies with the judge to weigh the individual defendants in front of them. And this particular defendant, as I said, pled to some extremely serious crimes, was the head of the clique, of the MS-13 clique that he belonged to. And, again, I recognize that there's been a lot of discussion, particularly in the reply brief, about how certain of those crimes should be seen as less serious because the defendant was intoxicated or because some of the plots didn't work out. But I think that that does a disservice to the victims in the case, the way in which the court evaluated all of the information that was in front of it. Was he the first one to plead in this crew that you were charging? Your Honor, I actually did not charge the original case, and so I'm not entirely sure where he was. I believe it's possible, but I'm not entirely sure if he was the first person to plead. Thank you, Ms. Smith. Thank you. Mr. Eisenman. I think I heard the government say that their position is the court did consider this aspect of cooperators being guilty to more crimes. And I'll represent that the court did not. I may have misunderstood the point that the government was making. The court did not address that. The ---- Under what rubric is that considered? Well, when you're ---- it's not a perfect fit, but when you're trying to see whether I'm asking. Okay. When you're trying to decide the two ways that you can consider disparities easily for similarly situated cooperators, it's a factor, because we all recognize people that do this for a living, why cooperators have a heavier plea than non-cooperators. With respect to co-defendants, especially when the government's arguing here, I don't know this was brought out so much in the district court, but when the government says it's less than half the guidelines and no one else got that kind of a departure, well, they're using that argument. I can counter that argument by saying it's less than half the guidelines because they were artificially either increased or the other guidelines were artificially decreased. I understand that someone needs to defend the court below and the government is doing the best job they can, but really when it comes down to it, they're citing conclusory things like the court below did. He was the leader. Well, there's a lot of facts about how he was a reluctant leader, how he was trying to get out, but because those facts go against the government's effort to defend the court below, the government just says he was the leader. Therefore, he was the most culpable. Well, that's very conclusory reasoning. And so I don't need to go over the facts in the reply brief, and it wasn't just trying to blow smoke and make it look like there was mitigating factors. Some of the things that the government said, some of the things that the presentence report recited just weren't accurate. And so the reply brief's job was to make them accurate so that that's the record that you're going. None of it contradicted below. And so I ask you to consider what the facts were, not the labels of convenience that are put on them. And finally, the government says that there was no sweetheart deal. Well, the sweetheart deal was because they pled guilty to conspiracies to murder. The sweetheart deal is that people pled guilty to one count. They didn't take a 924C, a 5-year mandatory minimum attached consecutively to that. The five grouping points were incredibly important here. It raised the mandatory minimum from 132 or 138 up to 235. That's a long time, 10 years, because of the grouping analysis. And the 924C, the last point I'll make. Sotomayor, is that a 5-year mandatory or a 10-year mandatory? I believe it was 5. I'm almost certain it was in this case. Take it back. Okay, take it back then. I'm just making sure I have it understood correctly. Thank you. The probation's analysis was puzzling to me at the time, and it's still puzzling, as to why they would say time served for these very serious offenses, conspiracy to murder, attempted murder, where there's actual steps taken, and yet there should be a 5-year. I thought it was the actual thing, the actual sentence. But 5 years added on because he bought a dissembled gun, and there's nothing else that connects him with a gun except for the fact that he bought this gun. It didn't work. He had to pay for it because he didn't do a good job trying to get it. It never worked. So it's just, I think, under a clearly erroneous standard, I think that you couldn't make a finding that the 5 years for the gun count really was logical. Thank you, Mr. O'Connor. Again, Your Honor, if there's not a quick decision on this, if you just consider a remand for bail, if there's any kind of indication that the Court's going to reverse, I'd appreciate it, so I could try to get him moving. Thanks. Thank you, Mr. Eisenman. Thank you, Ms. Smith. We'll reserve the floor.